KARNIG KERKONIAN
ELIZABETH AL-DAJANI
KERKONIAN DAJANI LLC
1555 Sherman Avenue, Suite 344
Evanston, Illinois 60201
Telephone: (312) 416-6180
Facsimile: (312) 604-7815
Email: kkerkonian@kerkoniandajani.com
Email: ealdajani@kerkoniandajani.com

GAYANE KHECHOOMIAN
201 N. Brand Blvd., Suite 200
Glendale, California 92203-3590
Telephone: (818) 454-0446
Email: gayane.khechoomian@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARKEV GHAZARIAN and GARO B. GHAZARIAN, Plaintiffs, <br><br> v. <br><br> REPUBLIC OF TURKEY, Defendant. | Case No.: 2:19-cv-4664 <br><br> **PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE RE: SUBJECT MATTER JURISDICTION** |

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………......……1

BACKGROUND ……………………………………………………………..1

ARGUMENT ……………………………………………………………4

I.   THE NINTH CIRCUIT REQUIRES ONLY A SHORT AND
     CONCISE STATEMENT OF JURISDICTION IN FSIA CASES
     BASED ON AN EXCEPTION TO SOVEREIGN IMMUNITY …4

II.  THE COMPLAINT PLEADS FACTS ESTABLISHING THE
     TORT IMMUNITY EXCEPTION CONSISTENT WITH NINTH
     CIRCUIT AUTHORITY ……………………………………………..5

III. THE DISCRETIONARY FUNCTION EXCLUSION DOES NOT
     SHIELD DEFENDANT TURKEY FROM JURISDICTION …….8

     A.   The Burden of Proving the Discretionary Function Exclusion
          Rests with the Foreign State ………………………………..8

     B.   The Discretionary Function Exclusion Does Not Apply Here
          Because Defendant's Agents' Conduct Was Neither
          Discretionary Nor the Type of Conduct the Exclusion Was
          Designed To Shield …………………………………………9

          1.   Defendant's agents' conduct was undertaken pursuant
               to a specific and mandatory policy—and therefore *not*
               discretionary ………………………………………..10

          2.   Defendant's agents' conduct is not the type of conduct
               that the discretionary function exclusion was designed
               to shield ……………………………………………..12

     C.   The Cases Cited by the Court Relating to the Discretionary
          Function Exclusion Are Not Applicable to This Case …….15

IV.  THE COMMERCIAL ACTIVITY EXCEPTION GIVES THE
     COURT SUBJECT MATTER JURISDICTION IN THIS CASE..18

A.   The Ninth Circuit Employs the Private Person Test in Determining the Applicability of the Commercial Activity Exception ……………………………………………………..18

B.   Defendant Acted as Would a Private Person In Soliciting Persons Residing in the United States to Visit Turkey for Tourism …………………………………………………………20

CONCLUSION ……………………………………………………… 23

# TABLE OF AUTHORITIES

<u>CASES</u>

*Alicog v. Kingdom of Saudi Arabia*
    860 F. Supp. 379, 382 (S.D. Tex. 1994) .................................................... 15

*Childs v. Government of Canada,*
    10-10524, 2010 WL 4791436, at *1 (E.D. Mich. Oct. 13, 2010), *report and recommendation adopted,* 10-10524, 2010 WL 4788564 (E.D. Mich. Nov. 17, 2010) ...................................................................................... 16,17

*Doe v. Holy See,*
    557 F.3d 1066, 1073-4 (9th Cir. 2009) ...4,5,6,8,9,10,11,12,13,14,15,17,23

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba,*
    462 U.S. 611, 622 n. 11, 103 S.Ct. 2591 (1983) ........................................ 6

*Kennewick Irrigation Dist. V. United States,*
    880 F.2d 1018, 1026 (9th Cir. 1989) ....................................................... 10

*Kline v. Kaneko,*
    685 F.Supp. 386 (S.D.N.Y. 1988) .......................................................... 16

*Kurd v. Republic of Turkey,*
    374 F. Supp. 3d 37, 46 (D.D.C. 2019) ...................................................... 3

*Lisa M. v. Henry Mayo Newhall Memorial Hospital,*
    12 Cal.4th 291, 294-5 (Cal. 1995) ............................................................ 7

*Mendoza v. Zirkle Fruit Co.,*
    301 F.3d 1163, 1168 (9th Cir. 2002) ........................................................ 5

*O'Bryan v. Holy See,*
    556 F.3d 361 (6th Cir. 2009) ............................................. 10,11,12,14,17

*Olsen v. Gov't of Mexico,*
    729 F.2d 641, 646 (9th Cir. 1984) ............................................................ 6

*Packsys, S.A. De C.V. v Exportadora de Sal, S.A. de C.V.,*
    899 F.3d 1081, 1093 (9th Cir. 2018) ......................................................... 4

*Park v. Shin,*
   313 F.3d 1138, 1145 (9th Cir. 2002)......................................................... 19

*Prescott v. United States,*
   973 F.2d 696, 702 and n. 4 (9th Cir. 1992) ............................................ 8

*Republic of Argentina v. NML Capital, Ltd.,*
   573 U.S. 134, 142 (2014) ....................................................................... 4

*Republic of Argentina v. Weltover Inc.,*
   504 U.S. 607, 617, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) ........... 18,19

*Risk v. Kingdom of Norway,*
   707 F.Supp. 1159, 1165-6 (N.D. Cal. 1989)....................................... 15,16

*Saudi Arabia v. Nelson,*
   507 U.S. 349, 358 at n.4................................................................. 19,20,23

*Skaff v. Meridien North America Beverly Hills, LLC,*
   556 F.3d 832, 841 (9th  Cir. 2007) ........................................................ 5

*Sugimoto v. Exportadora De Sal, S.A. de C.V.,*
   19 F.3d 1309 (9th Cir. 1994), as amended (July 1, 1994) ................ 20,22

*Sun v. Taiwan,*
   201 F.3d 1105, 1108-9 (9th Cir. 2000)  ......................................... 19,20,22

*United States v. Gaubert,*
   499 U.S. 315, 322 (1991) ................................................................ 9,10,13

*Xue Lu v. Powell,*
   621 F.3d 944 (9th Cir. 2010) ................................................................. 7

STATUTES

28 U.S.C. 1605 .......................................................................... 3,4,6,18,23,24

RULES

Fed. R. Civ. P. 8(a) ........................................................................................... 5

OTHER AUTHORITIES

https://www.cnn.com/2017/10/09/politics/turkey-us-visa-diplomacy/index.html
(last visited June 27, 2019) ............................................................................. 1

https://hometurkey.com/en/ (last visited on June 27, 2019)................................ 21

https://hometurkey.com/en/attractions (last visited June 27, 2019)................... 21

https://hometurkey.com/en/attractions/cat/religious-tourism/page/4
       (last visited June 27, 2019)....................................................................... 22

https://hometurkey.com/en/attractions/cave-church-of-saint-peter
       (last visited June 27, 2019)....................................................................... 22

https://hometurkey.com/en/attractions/mt-ararat-agri
       (last visited June 27, 2019)....................................................................... 21

https://hometurkey.com/en/blog/most-incredible-and-ancient-monasteries-you-
never-even-heard-of
       (last visited June 27, 2019)....................................................................... 22

https://hometurkey.com/en/destinations/kars (last visited June 27, 2019) ......... 21

https://hometurkey.com/en/destinations/van (last visited June 27, 2019) ......... 21

http://www.kultur.gov.tr/?_dil=2 (last visited June 27, 2019) ……...…….......... 20

http://www.kultur.gov.tr/Eklenti/43537,turkeytourismstrategy2023pdf.pdf?0&_t
ag1=796689BB12A540BE0672E65E48D10C07D6DAE291
       (last visited June 27, 2019) at p. 52........................................................ 22

https://www.reuters.com/article/us-usa-turkey-security/u-s-still-seeking-
explanation-for-arrest-of-staff-in-turkey-ambassador-idUSKBN1CG179
(last visited June 27, 2019) .............................................................................. 1

https://time.com/5351025/andrew-brunson-trump-turkey/ (last visited June 27, 2019) ........................................................................................................... 1

https://tr.usembassy.gov/message-u-s-citizens-government-turkey-suspension-visas-u-s-citizens-october-8-2017/ (last visited June 27, 2019). ......................... 2

https://www.youtube.com/watch?v=zFYM4ECGpZA
      (last visited June 27, 2019)........................................................................ 23

**INTRODUCTION**

Plaintiffs filed a 5-count, 44-page complaint in this matter on May 29, 2019. Dkt. #1 ("Cmplt.").  On June 10, 2019, the Court invited Plaintiffs to show cause, in writing no later than June 28, 2019, as to why the case should not be dismissed for lack of subject matter jurisdiction. *See* Dkt. # 15 ("Order").  Plaintiffs file this memorandum of law pursuant to the Court's order.

**BACKGROUND**

In early October 2017, Turkish authorities arrested a U.S. consulate staffer in Turkey on charges that he had ties to a preacher in Pennsylvania.[1] Turkish authorities had previously arrested and imprisoned an American Christian pastor, Andrew Brunson, who lived in Turkey with his wife and children and had a small church there.[2] As the U.S. Ambassador explained, Turkey was holding Pastor Brunson in a Turkish prison because he had been preaching the Christian faith in Turkey.[3] When Turkey refused to release the U.S. consulate staffer, the United States suspended visa services to Turkish citizens.[4] *Id.*  Turkey retaliated against the United States by suspending visa

---

[1] https://www.reuters.com/article/us-usa-turkey-security/u-s-still-seeking-explanation-for-arrest-of-staff-in-turkey-ambassador-idUSKBN1CG179 (last visited June 27, 2019).
[2] https://time.com/5351025/andrew-brunson-trump-turkey/ (last visited June 27, 2019).
[3] *See* fn. 1.
[4] https://www.cnn.com/2017/10/09/politics/turkey-us-visa-diplomacy/index.html (last visited June 27, 2019).

services to U.S. citizens on October 8, 2017.[5]   It was on the heels of this retaliation that Plaintiff Barkev Ghazarian ("Barkev"), an Armenian Christian born in Turkey and living in California, sought to return to Turkey to visit religious pilgrimage sites in his native land and the place where he was baptized.

Rather than process Plaintiff Barkev's visa application, grant it or deny it, Defendant's agents in the United States capitalized on the opportunity to initiate a malevolent charade to demean, ridicule and degrade Plaintiff Barkev, an elderly man then 86 years of age.  Defendant's agents were not executing routine discretionary consular acts—quite the contrary.  The Complaint pleads that Defendant's agents acted in ill-scripted design, in the United States, to make Plaintiff Barkev feel inferior and meaningless as an Armenian Christian. By their acts, they mocked the elderly man as a nonperson, attacked his dignity and confused him—and did so in the United States.  They sought to render his self-identity as a native Armenian Christian of Turkey, a patent nullity.   Knowing Plaintiff Barkev had to travel on December 22, 2017, Defendant's agents ridiculed him by emailing him that same afternoon, did not respond to his application, and directed him to the Los Angeles consulate with fee instructions on how to apply as a U.S. citizen. They did so with full knowledge that Defendant's retaliatory visa suspension regime against United States meant that Plaintiff Barkev would never actually be granted such a visa as a U.S. citizen.

---

[5] https://tr.usembassy.gov/message-u-s-citizens-government-turkey-suspension-visas-u-s-citizens-october-8-2017/ (last visited June 27, 2019).

Defendant's agents were not trying to process any visa application at all; they were capitalizing on an opportunity to degrade, demean and mock an elderly human being in the United States because he identified himself as an Armenian Christian.  In doing so, Defendant's agents were acting pursuant to a specific and mandatory policy of Defendant.  This case is *not* about the processing of a visa application.  It is about acts of harassment, degradation and ridicule committed by Defendant's agents in the United States, against persons in the United States and contrary to law in the United States—which conduct has resulted in serious and devastating consequences to an elderly man and his son.

The United States is not Turkey.  In directing its agents here to treat Plaintiff Barkev *in California* as it would direct its agents to deal with Christians (and Armenian Christians, in particular) *in Turkey*, Defendant has surreptitiously over-stepped its sovereign borders and caused its agents to trample indiscriminately on the rights of Plaintiffs.[6]  For the reasons below, this Court has original jurisdiction to adjudicate the tort claims that Plaintiffs bring against Defendant Turkey, and this United States federal district court has subject matter jurisdiction to adjudicate them.

---

[6] *See also Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 46 (D.D.C. 2019) (participants at a May 2017 protest over Turkish President Erdogan's visit to Washington D.C. suit against Republic of Turkey, Turkish security forces and civilian defendants for *inter alia* assault, battery and hate crimes).

**ARGUMENT**

This Court has subject matter jurisdiction pursuant to both the tort immunity exception and the commercial activity exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. 1605(a)(2) and (5). Plaintiffs have alleged facts outside the discretionary function exclusion to the tort immunity exception, consistent with an exception to the exclusion recognized by the Ninth Circuit. The commercial activity exception also provides jurisdiction here because there is conduct by Defendant relevant to an element of Plaintiffs' claims that constitutes commercial activity routinely exercised by private persons. Based on these exceptions, as well as the possibility of waiver pursuant to 28 U.S.C. 1605(a)(1)[7], the Court should not dismiss the Complaint for lack of subject matter jurisdiction.

## I. THE NINTH CIRCUIT REQUIRES ONLY A SHORT AND CONCISE STATEMENT OF JURISDICTION IN FSIA CASES BASED ON AN EXCEPTION TO SOVEREIGN IMMUNITY.

Plaintiffs' jurisdictional statement satisfies the pleading standard required to assert an exception to sovereign immunity. Cmplt. [Dkt. #1] ¶¶ 7,

---

[7] As an aside, under 28 U.S.C. 1605(a)(1), a foreign state shall not be immune from jurisdiction where the foreign sovereign has waived jurisdiction, either explicitly or by implication. *Republic of Argentina v. NML Capital*, *Ltd.,* 573 U.S. 134, 142 (2014) ("A foreign state may waive jurisdictional immunity, § 1605(a)(1)"); *Packsys, S.A. De C.V. v Exportadora de Sal, S.A. de C.V.,* 899 F.3d 1081, 1093 (9th Cir. 2018). Here, Defendant may have waived jurisdiction by its adoption and/or ratification of certain treaties cited in Count III. Cmplt. [Dkt. #1] ¶¶ 145, 146. In addition, upon being served, Defendant may waive jurisdiction and address the claims on the merits.

8.  The Ninth Circuit has stated that "we have **never** held that anything other than our usual notice pleading standard applies to complaints that allege an exception to foreign sovereign immunity." *Doe v. Holy See,* 557 F.3d 1066, 1073-4 (9th Cir. 2009) (emphasis added).  In fact, it has stressed that "[w]e do **not** impose a heightened pleading standard in the absence of a 'an explicit requirement in a statute of federal rule[.]'" *Id.* (emphasis added)*, citing Skaff v. Meridien North America Beverly Hills, LLC,* 556 F.3d 832, 841 (9th  Cir. 2007).

A heightened pleading standard is **not** invoked in FSIA cases: "In evaluating assertions of subject-matter jurisdiction based on an exception to foreign sovereign immunity . . . [the Ninth Circuit] appl[ies] the **same** notice pleading requirements [that it] would apply to any other assertion of subject-matter jurisdiction and look[s] only for a 'short and plain statement' of the basis for jurisdiction." *Doe,* 557 F.3d at 1074 (emphasis added).  Moreover, in an FSIA sovereign immunity exception case, it will "not engage in 'a hypertechnical reading of the complaint inconsistent with the generous notice pleading standard.'" *Doe,* 557 F.3d at 1081, *citing Mendoza v. Zirkle Fruit Co.,* 301 F.3d 1163, 1168 (9th Cir. 2002).  Plaintiffs have pled jurisdiction pursuant to both the tort immunity exception and the commercial activity exception consistent with the notice pleading requirements of Fed. R. Civ. P. 8(a) and controlling Ninth Circuit authority.

II.   **THE COMPLAINT PLEADS FACTS ESTABLISHING THE TORT IMMUNITY EXCEPTION CONSISTENT WITH NINTH CIRCUIT AUTHORITY.**

The FSIA tort immunity exception provides subject matter jurisdiction over a foreign sovereign under the tortious act exception (save the exclusions to the exception discussed *infra*) if there has been injury (1) occurring in the United States; (2) caused by a tortious act or omission; (3) where the alleged acts or omissions were those of a "foreign state or of any official or employee of that foreign state"; and (4) those acts or omissions were done within the scope of the tortfeasor's employment. *See* 28 U.S.C. § 1605(a)(5).   Where necessary, in determining whether the tortious act exception applies, the Court will apply state substantive law. *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba,* 462 U.S. 611, 622 n. 11, 103 S.Ct. 2591 (1983); *see also Doe,* 557 F.3d at 1081-3.

*First,* Plaintiffs alleged that the entire tort occurred in the United States. Cmplt. [Dkt. #1] ¶ 8.  They pled that Defendant's agents committed the wrongful acts against Plaintiff Barkev in the United States and were, at the time of the wrongful events, employed and present in the United States. *Id*. ¶¶ 103, 104.  Plaintiff Barkev was in California when he suffered his injury. *Id*. ¶¶ 2, 111.  Defendant's agents were in the United States when they committed the acts of which Plaintiffs complain. *Id*. ¶¶ 65, 79.  This first requirement is therefore met here, and *a fortiori*: the Ninth Circuit has interpreted § 1605(a)(5) to require that only *part* of the tort must occur in the United States. *Olsen v. Gov't of Mexico,* 729 F.2d 641, 646 (9th Cir. 1984).  Here, the *entire* tort occurred in the United States.

*Second,* Plaintiffs pled that the acts of Defendant's agents substantially caused their injuries.  Each of the causes of action detail Defendant's agents'

degrading and demeaning treatment of Plaintiff Barkev. Cmplt. [Dkt. #1] ¶¶ 107, 118-123, 133-139, 150-152, 164-165, 187.  For example, Paragraph 118 of the Complaint, incorporated into Counts I, II and V, details how Defendant's agents thwarted, harassed, ignored, confused and directed Plaintiff Barkev knowing they would cause him harm, pain and mental suffering. *Id*. ¶¶ 118, 133, 187.  Plaintiff Barkev alleged, in Count III, that Defendant's agents' conduct caused him substantial damage (*id*. ¶¶ 108, 143) and, in Count IV, that their conduct caused him permanent damage (*id*. ¶¶ 166, 167). Plaintiff Garo Ghazarian ("Garo") pled that Defendants' agents' conduct against Plaintiff Barkev caused him damage by interfering with his expected inheritance. *Id*. ¶¶ 190-192.   The Complaint sufficiently pleads tortious conduct and causation.

*Third,* the Complaint pleads that the conduct of Defendant's agents was in the scope of their employment: "The conduct of Defendant's agents, servants, employees and ostensible agents, in the United States, as set forth herein [in the Complaint], was committed in the course and scope of delegated duties and authority granted by Defendant to its agents in the United States." *Id*. ¶ 104.  Plaintiffs alleged that Defendant's agents were acting within the scope of their employment and for the benefit of Defendant. *Id*. ¶ 103.  The Ninth Circuit has held that, under California law, even an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for the purposes of *respondeat superior* liability. *Xue Lu v. Powell,* 621 F.3d 944 (9th Cir. 2010), *referencing Lisa M. v. Henry Mayo Newhall Memorial Hospital,* 12 Cal.4th 291, 294-5 (Cal. 1995).

*Finally,* Plaintiffs alleged that Defendant's agents were officials or employees of Defendant: "At all times relevant hereto, Defendant's agents, servants, employees and ostensible agents were the agents, servants, employees and ostensible agents of Defendant in the United States." Cmplt. [Dkt. #1] ¶ 102.   Plaintiff Barkev was communicating with Defendant's Embassy in Washington D.C. (*id.* ¶ 63) and Defendant's employee "Güner" even identified herself as calling from Defendant's Embassy in Washington D.C. *Id.* ¶ 65. In fact, Plaintiffs pled that "an individual identifying herself as 'Güner' from the [Turkish] Embassy in Washington D.C. telephoned the business office of Barkev's son, Plaintiff Garo" and that "'Güner' acknowledged receipt of Barkev's letter of December 6, 2017" which Barkev had sent to the Turkish Embassy Consular Section in Washington D.C. *Id.*

Accordingly, the Complaint pleads *prima facie* the required facts establishing jurisdiction under the tort immunity exception. *Doe,* 557 F.3d at 1081 ("we . . . do not engage in a hypertechnical reading of the complaint inconsistent with the generous notice pleading standard") (internal quotations and citations omitted).  Plaintiffs have sufficiently pled *prima facie* that the tort immunity exception applies here to give this Court subject matter jurisdiction. *Doe,* 557 F.3d at 1084; *Prescott v. United States,* 973 F.2d 696, 702 and n. 4 (9th Cir. 1992).

## III. THE DISCRETIONARY FUNCTION EXCLUSION DOES NOT SHIELD DEFENDANT TURKEY FROM JURISDICTION.

As to whether Defendant's agents' conduct falls outside the tort immunity exception because of the discretionary function exclusion, the Ninth

Circuit recognizes a clear and unambiguous exception to the discretionary function exclusion that applies in this case.

### A. The Burden of Proving the Discretionary Function Exclusion Rests with the Foreign State.

As a preliminary matter, the Ninth Circuit has confirmed that the burden of proving the discretionary function exclusion rests with the foreign state. *Doe,* 557 F.3d at 1084. To successfully invoke jurisdiction against a foreign state, a plaintiff need only "facially allege" matters falling outside the discretionary function exception. *Id.* To the extent that the Court is requiring Plaintiffs to *disprove* the discretionary function exclusion, the Court would be shifting the burden to Plaintiffs. Without waiving the argument that the burden to prove the applicability of the discretionary function exclusion rests with Defendant, Plaintiffs will articulate why the discretionary function exclusion does not apply in this case, in response to the Court's *sua sponte* order to show cause.

### B. The Discretionary Function Exclusion Does Not Apply Here Because Defendant's Agents' Conduct Was Neither Discretionary Nor the Type of Conduct the Exclusion Was Designed To Shield.

A foreign state is protected by the discretionary function exclusion if the challenged action meets two criteria: (1) it is discretionary in nature *and* (2) it is of the kind that the discretionary function exclusion was designed to shield. *See Doe,* 557 F.3d 1083-4 (9th Cir. 2009) (a foreign state "is protected by the discretionary function exclusion if the challenged action meets two criteria: it

is 'discretionary in nature' or 'involve[s] an element of judgment or choice' **_and_** (2) 'the judgment is of the kind that the discretionary function exception was designed to shield.'") (emphasis added), *citing United States v. Gaubert,* 499 U.S. 315, 322 (1991).  To prove the exclusion, the foreign state must show that the challenged action meets **both** *Gaubert* requirements. *Doe,* 557 F.3d at 1083-4.  Here, Defendant's agents' conduct does not meet **_either_**.

> 1.     Defendant's agents' conduct was undertaken pursuant to a specific and mandatory policy—and therefore was **_not_** discretionary.

The Ninth Circuit has recognized that the discretionary function exclusion does **_not_** apply where the conduct was undertaken consistent with a "'*specific* and *mandatory*'" policy of the foreign state. *Doe,* 557 F.3d at 1084; *citing Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1026 (9th Cir. 1989) (emphasis in original).  In other words, pleading a specific and mandatory policy renders a claim facially outside the discretionary function exclusion, thus surviving a motion to dismiss. *Doe,* 557 F.3d at 1084; *see also O'Bryan v. Holy See,* 556 F.3d 361, 387 (6th Cir. 2009)*.*  In *Doe,* the plaintiff did not plead a specific and mandatory policy and, as such, failed to facially plead conduct outside the discretionary function exclusion. *Doe,* 557 F.3d at 1084.

The Ninth Circuit's reasoning in *Doe* is consistent with the Sixth Circuit's conclusions in *O'Bryan v. Holy See,* 556 F.3d 361, 387 (6th Cir. 2009), cited by the Ninth Circuit in *Doe.*  The *O'Bryan* court held that the tort claims against the foreign state on the theory of *respondeat superior* were not

barred by the discretionary function exclusion because the complaint pled that the agent's conduct was pursuant to a specific policy of the defendant that its agents were required to follow. 556 F.3d at 387.  In fact, the Sixth Circuit explained: "According to the complaint, the 1962 Policy 'impose[d] the highest level of secrecy on the handling of clergy sexual abuse matters'[ . . . and t]hus, following the 1962 Policy cannot, on the pleadings in plaintiffs' complaint, be deemed discretionary." *Id*. at 387.  Where the foreign state's agents' conduct is undertaken pursuant to a mandatory policy, following the policy cannot be deemed discretionary. *Doe,* 557 F.3d at 1084; *Kenniwick,* 880 F.2d at 1026; *O'Bryan,* 556 F.3d at 387.

Plaintiffs here alleged that Defendant's agents' conduct was pursuant to a *mandatory* Targeted Policy from which Defendant's agents were not permitted to digress or deviate. Cmplt. [Dkt. #1] ¶ 96 ("Defendant has directed and continues to direct its agents, whether explicitly or implicitly, that no deviation or digression from its Targeted Policy is permitted.").  Plaintiffs alleged, a number of times, that "Defendant's agents' conduct was undertaken consistent with its Targeted Policy from which Defendant's agents were not permitted to digress and/or deviate." *See id*. ¶¶ 124; *see also id*. ¶¶ 140, 153, 172, 194. They pled that "Defendant's targeted Policy **requires** Defendant's agents in the United States to thwart, harass, confuse, degrade and humiliate native Armenian Christians, like Barkev, seeking to exercise rights in Turkey as native Armenian Christians." *Id*. ¶ 95 (emphasis added).

Plaintiffs also pled that the Targeted Policy was *specific*.  It was implemented at the very founding of the Turkish Republic, finding political

currency in the words of Mustafa Kemal Ataturk himself: "Armenians have no rights at all in this prosperous country." *Id*. ¶ 88. Plaintiffs alleged that the Targeted Policy had been established through "a series of legislative, executive, administrative" acts and "pursued, institutionalized, enhanced and adhered to by Defendant's successive governments and agents." *Id*. ¶¶ 90, 92. Plaintiffs explained the core purpose of the Targeted Policy: "The core purpose of the Targeted Policy was to strip native Armenian Christians of their rights and identities by dehumanizing, degrading, expropriating, alienating, disenfranchising, liquidating and otherwise severing Armenian Christians from their native lands and their native customs and religious practices on such lands." *Id*. ¶ 91. The Complaint also alleges how this Targeted Policy was applied against Plaintiff Barkev. *Id*. ¶¶ 97, 98. Finally, Plaintiffs specifically pled how Defendant's agents' conduct with respect to Plaintiff Barkev directly served the specific purposes of the Targeted Policy. *Id*. ¶¶ 94, 95.

The Complaint pleads a specific and mandatory policy from which Defendant's agents were not permitted to digress or deviate. Accordingly, Plaintiffs have alleged claims "facially outside the discretionary function [exclusion.]" *See Doe,* 557 F.3d at 1084. Plaintiffs submit that, as such, the Complaint should not be dismissed under the discretionary function exclusion. *Id.; O'Bryan*, 556 F.3d at 384.

   2. Defendant's agents' conduct is not the type of conduct that the discretionary function exclusion was designed to shield.

Even if Plaintiffs had not pled the Targeted Policy (which they did), the discretionary function exclusion still does not apply because the second *Gaubert* criterion is not met either. The conduct of which Plaintiffs complain is simply not the type of judgment that the discretionary function action was designed to shield. *See Doe,* 557 F.3d at 1083-4.

The conduct about which Plaintiffs' complaint is not about the grant or the denial of a visa application: "The claims set forth herein are not about the grant or denial of a visa." Cmplt. [Dkt. #1] ¶ 106. Plaintiffs complained about "Defendant's agents' abusive treatment of an elderly man . . . in violation of statutory and common law in the United States as well as international human rights law[ . . . which] have caused substantial injury to both Plaintiff Barkev and his son, Plaintiff Garo." *Id*. ¶¶ 107, 108. Plaintiffs alleged, in fact, that Defendant's agents' conduct had no meaningful connection to Defendant's visa application policy. *Id*. ¶ 87 (Defendant's agents' conduct had "***nothing to do with its visa application process per se***—and everything to do with the fact that Barkev is a native Armenian Christian of Turkey." (emphasis added).

The Complaint explains how Defendant's agents' conduct cannot be reconciled with Defendant's routine administrative functions. *Id*. ¶ 86 (Defendant's agents' treatment of Plaintiff Barkev was "neither consistent with its visa application policy nor practicable given Defendant's visa regime Defendant maintained at the time."). In other words, although Plaintiff Barkev submitted a visa application, Defendant's agents never intended to process it, to grant it or deny it. *Id*. ¶¶ 81-84. They could have granted the visa application; *they did not. Id*. ¶ 82. They could have denied the visa

application; *they did not*. *Id*.  They even could have told Plaintiff Barkev that there was something wrong with the application; *they did not. Id*. ¶¶ 81, 82, 83, 84.  Rather, and because Plaintiff Barkev sought to exercise rights as a native Armenian Christian from Turkey, Defendant's agents intentionally ridiculed, confused, degraded and demeaned him. *Id*. ¶ 84, 85.

It is *this* conduct that is at issue in this case—not the processing of a visa application that Defendant's agents would not acknowledge, let alone process. The Targeted Policy of Defendant required that Defendant's agents undertake acts to harm Plaintiff Barkev because he identified himself, and sought rights, as native Armenian Christian from Turkey.  These are the allegations of misconduct in this case.  Plaintiff Barkev complains that Defendant's agents harassed, confused, degraded, ridiculed and demeaned him in violation of international law and the statutory and common laws of the State of California. *Id.* ¶¶ 118-123, 133-139, 151-152, 164-165, 187.  Plaintiff Garo complains that by so treating his father, Defendant's agents intentionally interfered with Plaintiff Garo's expected inheritance. *Id*. ¶¶ 175-196. Plaintiffs both allege that Defendant's agents' conduct was pursuant to a specific and mandatory policy of Defendant from which Defendant's agents were not permitted to deviate or digress. *Id*. ¶¶ 96, 124, 140, 153, 172, 194; *Doe,* 557 F.3d at 1084; *O'Bryan,* 556 F.3d at 370.

Because this is an FSIA case does ***not*** mean that a greater-than-usual level of detail in the pleadings is required, and it does ***not*** mean that the factual allegations may not be construed in favor of Plaintiffs. *Doe,* 557 F.3d at 1073.  The misconduct complained of by Plaintiffs, as pled, is not the type

of conduct the discretionary function exclusion was designed to shield. *See id.* at 1083-4.

### C. The Cases Cited by the Court Relating to the Discretionary Function Exclusion Are Not Applicable to This Case.

In citing four cases involving the discretionary function exclusion to the tort immunity exception, the Court invited Plaintiffs to explain why the Court should exercise jurisdiction. Order [Dkt.# 15] at 2. First, Plaintiffs respectfully point out that the four cases are not binding precedent and, secondly, and more importantly, they are not applicable to this case.

In *Alicog v. Kingdom of Saudi Arabia,* 860 F. Supp. 379, 382 (S.D. Tex. 1994), the Court held that the Saudi King was immune from suit because his consular agents' withholding of plaintiffs' passport and holding of plaintiffs in a hotel was a discretionary act. Importantly, the Texas federal court acknowledged that "[t]he law has imposed limits on the exception for discretionary functions." *Id*. at 383. One of those crucial limitations, recognized by the Ninth Circuit in *Doe*—the existence of a specific and mandatory policy—was simply not at issue in *Alicog*.

In *Risk v. Kingdom of Norway,* 707 F.Supp. 1159, 1165-6 (N.D. Cal. 1989), the question presented was whether the discretionary function exclusion can shield conduct in aiding a Norwegian citizen in removing her children from their father's custody and taking them to Norway. The *Risk* court held that the Norwegian officials' conduct in giving advice, travel documents and funds to a Norwegian citizen and aiding her travel to Norway with her children was a discretionary consular act that served Norway's

interests in protecting its own citizens. 707 F.Supp. at 1166-7. *Risk* is patently inapposite here: Defendant cannot offer *any* valid state interest in subjecting Plaintiff Barkev to abusive and harassing treatment and certainly cannot demonstrate that its agents were acting in the aid of anyone at all, let alone a Turkish citizen. Finally, and again unlike the case at bar, there was no specific and mandatory policy pled in *Risk* which removed the element of discretion from the agent's conduct.

The case from New York, *Kline v. Kaneko*, 685 F.Supp. 386 (S.D.N.Y. 1988), is likewise inapplicable to the facts here. The *Kline* court first held that the tort immunity exception did not apply because the entire tort did not occur in the United States. 685 F.Supp. at 391; *cf. supra* Section II. The court then added that the discretionary function exclusion applies because the "[e]nforcement of Mexico's immigration laws and the decision to expel Kline from the country clearly are discretionary functions[.]" *Kline,* 685 F.Supp. at 392. In this case, Plaintiffs' claims do not involve Turkey's immigration laws and, in fact, do not even involve Turkey's visa rules. Cmplt. [Dkt. #1] ¶ 106 ("The claims set forth herein are not about the grant or denial of a visa."); *see also supra* Section III.B.2. Moreover, the *Kline* plaintiffs also did not plead any specific and mandatory policy removing discretion from the foreign state's agents' conduct.

Finally, in *Childs v. Government of Canada,* 10-10524, 2010 WL 4791436, at *1 (E.D. Mich. Oct. 13, 2010), *report and recommendation adopted,* 10-10524, 2010 WL 4788564 (E.D. Mich. Nov. 17, 2010), plaintiff sued Canada "claiming some sort of interference with his right to enter

Canada[.]"  The *Childs* court focused on the two-part test, explaining that "the *first* inquiry is whether the challenged action involved an element of choice or judgment[.]"  *Id*. at *3 (emphasis added).  It is only "*if choice or judgment is exercised*" that the court moves then to the second inquiry, "whether that choice or judgment . . . was one involving social, economic or political policy." *Id*.  The applicability of *Childs* in this case fails at the very first inquiry: Plaintiffs here have pled a specific and mandatory policy from which Defendant's agents were not permitted to digress and/or deviate, which removed the element of discretion.  As pled, the Complaint *sub judice* does not warrant moving to the second inquiry at all.  Yet, even if Plaintiffs' had not pled the Targeted Policy (which they did), *Childs'* second inquiry finding that "Defendants' procession, investigation, and decision" of plaintiff's application is a type of judgment covered by the exclusion is not persuasive here, where Defendant's agents never intended to process, grant or deny Barkev's application—and, in fact, did not process, grant or deny it.  Defendant's agents were acting pursuant to a Targeted Policy to hurt Plaintiff Barkev for identifying himself, and seeking rights, as a native Armenian Christian from Turkey. *See supra* Section III.B.2.

None of the cited cases plead a specific and mandatory policy removing the element of discretion from the foreign state's agents' conduct.  Plaintiffs have so pled here and, as pled in the Complaint, Defendant's agents' actions could not be discretionary because they were undertaken in strict conformity with the Targeted Policy from which no digression or deviation was permitted. *Doe,* 557 F.3d at 1084; *O'Bryan,* 556 F.3d at 370.

**IV.   THE   COMMERCIAL   ACTIVITY   EXCEPTION   GIVES   THE COURT SUBJECT MATTER JURISDICTION IN THIS CASE.**

The Court invites Plaintiffs to explain why the commercial activity exception applies here since, as the Court describes, Plaintiffs' claims are "predicated on allegations that the Republic of Turkey and its agents improperly processed a visa application[.]" Dkt. #15 at 1-2. The Court should not focus too narrowly on specific conduct ***not relevant*** to Plaintiffs' claims (the grant or denial or a visa) but focus on the commercial activity that ***is relevant*** to Plaintiff's claims (soliciting religious tourism in the United States). The commercial activity exception also gives this Court subject matter jurisdiction in this case.

**A.   The Ninth Circuit Employs the Private Person Test in Determining the Applicability of the Commercial Activity Exception.**

The FSIA commercial activity exception provides that a foreign state shall not be immune from the jurisdiction of this Court where the foreign state's actions are based upon "a commercial activity carried on in the United States by the foreign state" or "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere[.]" 28 U.S.C. 1605(a)(2). In *Republic of Argentina v. Weltover,* 504 U.S. 607, 617, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)*,* the Supreme Court held that "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." 504 U.S. at 614.

In making a commerciality determination, the Ninth Circuit has stressed that "an activity is commercial unless it is one that *only* a sovereign state could perform." *Park v. Shin,* 313 F.3d 1138, 1145 (9th Cir. 2002) (emphasis added). The FSIA further directs courts to look at the *nature* of the activity and not its *purpose*. *Id*. ("Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role of the sovereign is one that could be played by a private actor.").

Moreover, the Ninth Circuit has specifically stated that the nature of the commercial activity cannot be defined "far too narrowly" when determining whether the activity triggers the commercial activity exception. *Park,* 313 F.3d at 1145; *see also Sun v. Taiwan*, 201 F.3d 1105, 1108-9 (9th Cir. 2000). In fact, this Circuit has specifically held that a court must not focus solely on the specific conduct but, instead, consider the broader "category" of the activity. *Sun,* 201 F.3d at 1109 ("The phrase ['type of activity'] does not refer only to the specific act performed by the government, but rather to a category of conduct."). Referencing the facts in *Weltover,* the Ninth Circuit explained that "[n]o private party would refinance government debt either, but the Supreme Court has held this activity to be commercial" because the category of conduct—issuing bonds to refinance a debt—was a type of activity that could be undertaken by private players. *Sun,* 201 F.3d at 1109; *see Weltover,* 504 U.S. at 615.

Finally, and perhaps most critically here, in order for the commercial activity exception to apply, "[t]he entire case need not be based on the commercial activity of the defendant." *Sun,* 201 F. 3d at 1009; *see also Saudi*

*Arabia v. Nelson,* 507 U.S. 349, 358 at n.4. In fact, "an action is based on commercial activity in the United States if an ***element*** of the plaintiff's claim consists in conduct that occurred in commercial activity carried on in the United States." *Sugimoto v. Exportadora De Sal, S.A. de C.V.,* 19 F.3d 1309, 1311 (9th Cir. 1994), as amended (July 1, 1994) (emphasis added); *see also Sun*, 201 F.3d at 1109; *Nelson,* 507 U.S. 349 at 356.

**B.    Defendant Acted as Would a Private Person in Soliciting Persons Residing in the United States to Visit Turkey for Tourism.**

A crucial element of Plaintiffs' claims is that Plaintiff Barkev intended to travel to Turkey to make religious pilgrimage and visit his family's native Armenian Christian prayer cites and native lands. *See* Cmplt. [Dkt. #1] ¶¶ 43; 56, 57. Defendant's active marketing of religious tourism in Turkey is a commercial activity that speaks directly to this element of Plaintiffs' claims. Moreover, it is precisely the type of commercial activity conducted regularly by tourism companies and agencies—and is not in the exclusive domain of sovereigns.

First, Defendant actively markets Armenian Christian heritage sites, churches and native lands in the United States to solicit tourism to Turkey. Defendant's Ministry of Culture and Tourism website, published in English online at http://www.kultur.gov.tr/?_dil=2 (last visited June 27, 2019), contains a link to the glittering Turkish Tourism Portal through which Defendant actively markets Armenian churches and Armenian cultural heritage sites to potential visitors in an effort to win tourism to Turkey, for the

financial gain and commercial benefit of Defendant. For example, Defendants' Turkish Tourism Portal showcases the historic Armenian cities of Kars and Ani, the latter of which it calls the "City of 1001 Churches." *See* https://hometurkey.com/en/destinations/kars (last visited June 27, 2019). It highlights the Armenian Church on Aghtamar Island in Lake Van in a vivid pictorial landscape. *See* https://hometurkey.com/en/destinations/van (last visited June 27, 2019). The site contains links to "Attractions", "Destinations", a travel blog, pictures of beaches, pools and cuisines, and even links to "Follow Us on Social Media". *See* https://hometurkey.com/en/ (last visited on June 27, 2019). The portal, moreover, even has a direct link to Defendant's electronic visa application. *See* https://hometurkey.com/en/attractions (last visited June 27, 2019). Defendant operates a rich travel site competing openly in the online tourism market.

Moreover, Defendant specifically markets "religious tourism" in the United States through its portal. It lures visitors to Mount Ararat noting that "[a]ccording to the Old Testament, this is the place where Noah's Ark landed." *See* https://hometurkey.com/en/attractions/mt-ararat-agri (last visited June 27, 2019). It showcases the Cave Church of Saint Peter in Antioch, claiming that it is the first church in the world and that "Anatolia is a symbol of the brotherhood of religious where diverse religions and cultures have coexisted in peace over centuries." https://hometurkey.com/en/attractions/cave-church-of-saint-peter (last visited June 27, 2019). Defendant displays a vivid spray of Christian monasteries claiming that "these monasteries are spellbinding remains of an era gone by,

and of some of the first Christian communities anywhere in the world." *See* https://hometurkey.com/en/blog/most-incredible-and-ancient-monasteries-you-never-even-heard-of (last visited June 27, 2019).

In fact, a portion of its site is plainly labelled "Religious Tourism" and contains multiple pages featuring religious tourism destinations, including Armenian and Christian churches and shrines. https://hometurkey.com/en/attractions/cat/religious-tourism/page/4 (last visited June 27, 2019). Defendant's Ministry of Culture & Tourism details its "branding" and "tourism development zones" strategy—and even describes its "Faith Tourism Corridor" in "the city settlements of Hatay," the very province in which Plaintiff Barkev's place of baptism, Ballum, is now situated. *See* http://www.kultur.gov.tr/Eklenti/43537,turkeytourismstrategy2023pdf.pdf?0&_tag1=796689BB12A540BE0672E65E48D10C07D6DAE291 (last visited June 27, 2019) at p. 52.

Defendant even targets promotional, marketing videos directly to Los Angeles residents. For example, Defendant's sovereign-owned carrier, Turkish Airlines, has employed celebrities such as Kobe Bryant, plainly familiar to L.A. residents including Lakers' fans Plaintiffs Barkev and Garo, to showcase tourism to Turkey, even publishing a video in the U.S. showing the ease of a direct flight from Los Angeles to Turkey. *See* https://www.youtube.com/watch?v=zFYM4ECGpZA (last visited June 27, 2019). These are the activities of travel-related companies.

Defendant's marketing of Armenian Christian heritage sites and Christian religious tourism in the United States is a commercial activity, and it

speaks directly to an element of Plaintiffs' claims. *See Sugimoto,* 19 F.3d 1311.   This is the type of activity that is undertaken by private players. *See Sun,* 201 F.3d at 1109; *see Weltover,* 504 U.S. at 615.   As such, the Complaint pleads a short and concise statement as to the commercial activity exception (Cmplt. [Dkt. #1] ¶ 8;*Doe,* 557 F.3d at 1081), and there is no basis to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction.

## CONCLUSION

Foreign sovereign immunity is an important protection for countries under international law—but such immunity is not absolute in the United States.   The FSIA is a clear departure from the "absolute" theory of sovereign immunity, and it codifies the "restrictive" theory of sovereign immunity first endorsed by the State Department in 1952. *Weltover,* 504 U.S. at 612; *Nelson,* 507 U.S. 349 at 359.   This "restrictive" theory of sovereign immunity does not award a foreign state the license to act indiscriminately contrary to the laws of the United States, international humanitarian law or established norms of civility; and it certainly does not give Defendant Republic of Turkey a free pass to malevolently abuse, discriminate and interfere with the rights and dignity of human beings right here on American soil and in the Ninth Circuit.   Under the facts pled in the Complaint, the Court has subject matter jurisdiction pursuant to both the tort immunity and commercial activity exceptions, 28 U.S.C. 1605(a)(2) and (5).

Wherefore, Plaintiffs respectfully submit this Memorandum of Law to the Court and respectfully request that this Court find that it has subject matter jurisdiction in this matter.

Dated:  June 28, 2019                    Respectfully submitted,

                                         BARKEV GHAZARIAN and
                                         GARO B. GHAZARIAN

                                         /s/ Karnig Kerkonian

                                         KARNIG KERKONIAN
                                         ELIZABETH AL-DAJANI
                                         KERKONIAN DAJANI LLC
                                         1555 Sherman Avenue, Suite 344
                                         Evanston, Illinois 60201
                                         Telephone: (312) 416-6180
                                         Facsimile: (312) 604-7815
                                         Email: kkerkonian@kerkoniandajani.com
                                         Email: ealdajani@kerkoniandajani.com

                                         GAYANE KHECHOOMIAN
                                         201 N. Brand Blvd., Suite 200
                                         Glendale, California 92203-3590
                                         Telephone: (818) 454-0446
                                         Email: gayane.khechoomian@gmail.com


                                         *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Karnig Kerkonian, hereby certify that on June 28, 2019, I caused the Plaintiffs' Reply to Order to Show Cause re Subject Matter Jurisdiction, to be electronically filed with the Clerk of the Court for the United States District Court for the Central District of California using the CM/ECF system, which automatically serves such filing on the attorneys of record in this case.

*/s/ Karnig Kerkonian*