KARNIG KERKONIAN (pro hac vice)
kkerkonian@kerkoniandajani.com
ELIZABETH AL-DAJANI (pro hac vice)
ealdajani@kerkoniandajani.com
KERKONIAN DAJANI LLP
1555 Sherman Avenue, Suite 344
Evanston, Illinois 60201
Telephone: (312) 416-6180
Facsimile: (312) 604-7815

GAYANE KHECHOOMIAN (Bar No. 296673)
gayane.khechoomian@gmail.com
201 N. Brand Blvd., Suite 200
Glendale, California 92203-3590
Telephone: (818) 454-0446

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARKEV GHAZARIAN and GARO B. GHAZARIAN,<br><br>        Plaintiffs,<br><br>v.<br><br><br>Republic of turkey,<br><br>        Defendant. | Case No.: 2:19-cv-4664<br><br><br>**PLAINTIFFS' MOTION TO AMEND AND RECONSIDER THE JANUARY 14, 2021 ORDER** |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................1

ARGUMENTS ......................................................................................................7

     I. PLAINTIFFS' MOTION IS PROPER UNDER FRCP 59(e). ...................8

     II. NINTH CIRCUIT LAW ESTABLISHES THAT DISMISSAL FOR WANT OF PROSECUTION IS NOT PROPER IN THIS CASE...............9

          A. Dismissal for Want of Prosecution Requires Application of Established Ninth Circuit Factors ......................................................9

          B. The FSIA Service Provisions Are Mandatory, and Plaintiff Has Complied Strictly Complied ...........................................................10

          C. Application of the Relevant Ninth Circuit Factors to the Record Here Militates Strongly *Against* Dismissal for Want of Prosecution ...................................................................................14

CONCLUSION ...................................................................................20

1

# <u>TABLE OF AUTHORITIES</u>

2
**CASES**:

3

4
*389 Orange St. Partners v. Arnold,*

5
   179 F.3d 656 (9th Cir. 1999) ................................................................. 8

6
7
*Ace Novelty Co. v. Gooding Amusement Co.,*

8
   664 F.2d 761 (9th Cir. 1981) ........................................... 9, 10, 15, 19

9
*American Ironworks & Erectors, Inc. v. North Am. Const. Corp.,*

10
   248 F.3d 892 (9th Cir. 2001) ............................................................. 8

11
12
*Anderson v. Air West, Inc.,*

13
   542 F.2d 522 (9th Cir. 1976) ....................................................... 10, 15

14
*Ash v. Cvetkov,*

15
   739 F.2d 493 (9th Cir. 1984) ................................................16, 17, 18

16
*Bautista v. Concentrated Employment Program of Dep't of Labor,*

17
   459 F.2d 1019 (9th Cir. 1972) ........................................................... 9

18
19
*Cavic v. Republic of Serbia,*

20
   2018 WL 6038346  (C.D. Cal. March 21, 2018)........................... 11, 15

21
*Circuit City Stores, Inc. v. Mantor,*

22
   417 F.3d 1060 (9th Cir. 2005) ........................................................... 7

23
*Citizens Utilities Co. v. American Telephone and Telegraph Co.,*

24
   595 F.2d 1171 (9th Cir.), cert. denied, 444 U.S. 931 (1979) ............10

25
26
*Doe I v. State of Israel,*

27
   400 F.Supp.2d 86 (D.D.C. 2005)   ...................................................19

28
*Hamilton v. Neptune Orient Lines, Ltd.,*

811 F.2d 498 (9th Cir. 1987) ........................................................................ 9, 17

*Johnson v. United States Dept. of Treasury,*

    939 F.2d 820 (9th Cir. 1991) ...................................................................... 10, 19

*Link v. Wabash Railroad Co,*

    370 U.S. 626 (1962) .......................................................................................... 9

*Mir v. Fosburg,*

    706 F.2d 916 (9th Cir. 1983) ...................................................................... 10, 19

*Oliva v. Sullivan,*

    958 F.2d 272 (9th Cir. 1992) ...................................................................... 10, 19

*Osterneck v. Ernst & Whinney,*

    489 U.S. 169 (1989) .......................................................................................... 8

*Pearson v. Dennison,*

    353 F.2d 24 (9th Cir. 1965) .............................................................................. 9

*Peterson v. Islamic Republic of Iran,*

    627 F.3d 1117 (9th Cir. 2010) ........................................................................ 11

*Rice Corp. v. Grain Bd. of Iraq,*

    582 F.Supp.2d 1309 (E.D. Cal. September 30, 2008) ...................................... 11

*Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,*

    5 F.3d 1255 (9th Cir. 1993) .............................................................................. 8

*States Steamship Co. v. Philippine Air Lines,*

    426 F.2d 803 (9th Cir. 1970) .................................................................. 9, 10, 18

*United States ex rel. Hoggett v. Univ. of Phoenix,*

    863 F.3d 1105 (9th Cir. 2017) .......................................................................... 8

*White v. N.H. Dep't of Emp't Sec.,*

1

455 U.S. 445 (1982) ......................................................................... 8

2

3 **STATUTES:**

4 28 U.S.C. § 1330 ...............................................................................2

5 28 U.S.C. § 1602, *et seq* ................................................................2

6 28 U.S.C. § 1608(a)........................................................ *in passim*

7 28 U.S.C. § 1608(a)(1) ...............................................................2, 11

8

9 28 U.S.C. § 1608(a)(2) ................................................... *in passim*

10 28 U.S.C. § 1608(a)(3) ................................................... *in passim*

11 28 U.S.C. § 1608(a)(4) ................................................... *in passim*

12 28 U.S.C. § 1608(c)(2) ....................................................................5

13 28 U.S.C. § 1608(d)..........................................................................5

14 Fed. R. Civ. P. 4 (j)...........................................................10, 11, 15

15

16 Fed. R. Civ. P. 4(j)(1) ...............................................................10, 15

17 Fed. R. Civ. P. 4(m).....................................................2, 11, 15

18 Fed. R. Civ. P. 41(b) ........................................................................9

19 Fed. R. Civ. P. 59(e) ....................................................... *in passim*

20 22 C.F.R. Part 93.1(b) ...............................................................13, 14

21

22 22 C.F.R. Part 93.1(e)................................................................13, 16

23 Local Rule 41-1 .....................................................................9, 17, 18

24

25 **LEGISLATIVE MATERIALS:**

26 H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. (1976) reprinted in 1976 U.S. Code of

27 Cong. & Ad. News 6623 ...............................................................13, 14

28

1
2

**INTRODUCTION**

3
4

Service of process on a foreign state is a strictly regulated undertaking, one

5
6
expressly delineated by Congress in the Foreign Sovereign Immunities Act ("FSIA"),

7
8
28 U.S.C. § 1608(a), *et seq*. Plaintiffs adhered to the mandated service methods

9
exactly and in proper succession, as required. However, on January 14, 2021, in the

10
midst of section 1608(a)(4) service, the Court entered a minute order dismissing the

11
case, without prejudice, for lack of prosecution "[b]ecause the Court has given

12
Plaintiffs nearly six months to serve Defendant and no further progress appears likely

13
to be made[.]" ECF 36. Given the explicit FSIA service requirements and the

particularities of this case, dismissal was improper under established Ninth Circuit

authority,

14
15

Plaintiffs respectfully invite the Court to reconsider its dismissal order and

16
reinstate the case. Plaintiffs have diligently pursued service on the Defendant in

17
accordance with the strict requirements of the FSIA. Even the Court acknowledged

18
this. Ultimately, it was not Plaintiffs, but the Clerk of this Court, that would be

19
notified by the State Department upon the success or rejections of section 1608(a)(4)

20
service.

21
22

**BACKGROUND**

23
Plaintiffs filed the Complaint in this matter against the Republic of Turkey on

24
May 29, 2019. ECF 1 ("Cmplt."). The Republic of Turkey is a foreign sovereign.

25
Cmplt. ¶ 4. Proper service on a foreign sovereign is governed specifically by section

26
1608(a) of the FSIA.

27
28

Summons was issued in this action on June 3, 2019. ECF 10. One week later, the Court *sua sponte* issued an Order to Show Cause as to why the case should not be dismissed for lack of subject matter jurisdiction, stating that it does not appear that an exception to the Foreign Sovereign Immunities Act,  28 U.S.C. §§ 1330, 1602 *et seq.*, applies, which would give the federal court subject-matter jurisdiction over Plaintiffs' claims against the Republic of Turkey. ECF 15 ("Order to Show Cause").

On June 28, 2019, Plaintiffs filed their response ("Response") to the Order to Show Cause. ECF 16. Upon review of Plaintiffs' Response, the Court did ***not*** dismiss the case, and it held that it "will defer a determination about its jurisdiction until after Turkey has been served and had an opportunity to provide its views on the issue." ECF 18. Plaintiffs then proceeded with service pursuant to FSIA § 1608(a).

As there is no special arrangement for service between the United States and the Republic of Turkey, service under 28 U.S.C. § 1608(a)(1) did not apply. Accordingly, Plaintiffs proceeded with service on Defendant under 28 U.S.C. § 1608 ("Hague Service"). Upon filing the Complaint, Plaintiffs submitted the complaint, amended notice of suit, summons in a civil action, civil cover sheet, and certification and notice of interested parties ("Service Documents") to Legal Language Services ("Hague Service Agent") for official translation and service in accordance with the Hague Convention. ECF 20 at 7. When the official translation was completed, the Hague Service Agent sent the Service Documents, with the accompanying official translations, to the Turkish Central Authority. *Id.*

While 28 U.S.C. § 1608(a)(2) service was in process, this Court issued *another* Order to Show Cause on October 4, 2019, citing the Federal Rules of Civil Procedure 4(m), this one concerning the lack of prosecution. ECF 19 ("Order to Show Cause

2"). Plaintiffs responded on October 11, 2019, explaining that they are required to follow the mandatory provisions of FSIA section 1608(a) and provided the Court an update on the status of service. ECF 20. Specifically, Plaintiffs explained that the Central Authority for Defendant Turkey received the Service Documents and Hague Request on August 16, 2019. ECF 20-1, ¶ 5; ECF 20-3; ECF 20-4. Plaintiffs received notice from the Hague Service Agent that it currently "takes an average of 5-7 months before proof of service is returned to the applicant." ECF 20-1, ¶ 6; ECF 20-3. In fact, the earliest that the Turkish Central Authority was expected to provide even a periodic report on service would be 8-10 weeks after the filing of the Hague Request with the Central Authority or by around October 25, 2019. ECF 20-1, ¶¶ 5, 7 and ECF 20-3. Importantly, (a)(2) service could take an additional three to five months to be effectuated. ECF 20-1, ¶ 7; ECF 20-3. Plaintiffs' counsel even requested that its Hague Service Agent undertake periodic follow up with the Turkish Central Authority and inform counsel of progress with service. ECF 20-1, ¶ 8.

On October 24, 2019, after review of the Plaintiffs' Response to the Second Order to Show Cause, the Court held that Plaintiffs' Response "explain[ed] that because Defendant Republic of Turkey ('Defendant') is a foreign sovereign, the 90-day time limit for service does not apply in this case." ECF 22 at 1; *see* ECF 20 at 2-3. The Court also acknowledged that Plaintiff must serve pursuant to the Hague Convention and held that "So far, ***Plaintiffs have complied with the Hague Convention***." ECF 22 at 1. (emphasis added). The Court also cited evidence in the record that the average time for return of proof of service is between five and seven months and that Defendant will either accept or reject service within three to five

months. *Id.* The Court continued its order to show cause and ordered that Plaintiffs file a status report as to service by January 20, 2020. *Id.* at 2.

On October 24, 2019, as well, Plaintiffs informed the Court that Turkey rejected service under the Hague Convention. ECF 21. Specifically, Plaintiffs had provided the Court with a letter from the Turkish Ministry of Justice to the Hague Service Agent informing that Defendant rejected service under the Hague Convention. *See* ECF 21-2 at 3; *see also* ECF 22 at 1. Plaintiffs also informed the Court that, pursuant to the service requirements strictly delineated under the FSIA, Plaintiffs would proceed to service on Defendant as required under 28 U.S.C. § 1608(a)(3). ECF 21.

In accordance with 28 U.S.C. § 1608(a)(3), Plaintiffs caused their Hague Service Agent to compile and dispatch the complaint, amended notice of suit, summons in a civil action, civil cover sheet, and certification and notice of interested parties with translations thereof (again, "Service Documents") to the Clerk of the Court for service on Defendant. ECF 26, ¶ 1; ECF 26-1. On December 2, 2019, the Clerk dispatched the foreign mailing via Federal Express to the Minister of Foreign Affairs, as required by 28 U.S.C. § 1608(a)(3). ECF 26, ¶ 1; ECF 26-1; ECF 26-2. On December 5, 2019, Federal Express delivered the Clerk's foreign service package to the Foreign Ministry, to the attention of the Foreign Minister; it was signed for by a "T. Ayfun" at 10:46a.m. ECF 26, ¶ 2; ECF 26-2. Plaintiffs secured a proof of delivery from Federal Express on January 19, 2020, confirming delivery and signature. ECF 26-3.

Plaintiffs filed an affidavit of service with the Clerk of the Court on January 20, 2020. ECF 26. On that same day, Plaintiffs filed another Notice on Status of

Service with the Court, informing the Court Plaintiffs had effectuated service on Turkey under 28 U.S.C. 1608(a)(3). ECF 27 (Plaintiffs' Notice on Status of Service). Given the date of service under (a)(3), Turkey was required to respond to this Complaint by February 3, 2020. *See* ECF 28-1; *see also* 28 U.S.C. § 1608(c)(2); *see also* 28 U.S.C. § 1608(d).

On March 13, 2020, after sufficient time had passed without an appearance by Defendant, Plaintiffs filed an Application of Entry of Default against Turkey. ECF 28. On March 30, 2020, the Court ***denied*** entry of default against Turkey, finding that Turkey had summarily objected to service by mail in the Hague Convention. *See* ECF 30 at 3. The Court ordered Plaintiffs to submit a status as to service under 28 U.S.C. § 1608(a)(4) by April 30, 2020. *See id*. at 4.

On April 14, 2020, Plaintiffs initiated service under section 1608(a)(4) by transmitting a package to the Hague Service Agent including the Service Documents and a cover letter to the Clerk of the Court for the U.S. District Court for the Central District of California and check to the U.S. Department of State in payment of the required fee to effectuate service under 28 U.S.C. § 1608(a)(4). *See* ECF 34-1, ¶ 2.

On April 24, 2020, the Service Agent transmitted the package, along with its own cover letter and three sets of service documents translated into Turkish (Amended Notice of Suit, Summons, Complaint, Civil Cover Sheet and Certificate and Notice of Interested Parties), to the Clerk of the Court for the U.S. District Court for the Central District of California to process and dispatch to the U.S. State Department in accordance with 28 U.S.C. 1608(a)(4) and the U.S. State Department's instructions. *See* ECF 34-1, ¶ 3; ECF 34, Exhibits 1, 1-A, 1-B and 1-C; *see also* 28

U.S.C. 1608(a)(4). This package was delivered to the Clerk of the Court on April 27, 2020. *See* ECF 34-1, ¶ 3; ECF 34, Exhibit 1-B at 4-5.

On April 29, 2020, the Clerk of the Court filed a Receipt for Foreign Service evidencing that the request to forward the package to the U.S. Secretary of State was "completed and submitted to FedEx on 4/29/20." *See* ECF 31. On that same day, Plaintiffs filed a Notice on Status of Service notifying the Court of the Clerk's filing. ECF 32; *see* ECF 31.

On May 20, 2020, the Court entered an order continuing the Second Order to Show Cause and specifically finding that "although Plaintiffs still have not effected service on Turkey, ***they have complied with section 1608(a)(4)*** thus far." ECF 33 at 2 (emphasis added). The Court ordered Plaintiffs to file another Notice on Status of Service by July 20, 2020. *Id.*

On July 17, 2020, Plaintiffs filed a Notice on Status of Service informing the Court that Plaintiffs had initiated service on Turkey under 28 U.S.C. 1608(a)(4) and that the Clerk had delivered the Service Documents to the U.S. State Department. ECF 34. At such time, the United States' Department of State had the Service Documents, along with the required fees necessary for service via diplomatic channels. ECF 31, 34 at 3, 34-5 at 3. Those Service Documents were tendered to the Department of State by the Clerk of the Court. ECF 28.

Plaintiffs inquired about the status of the (a)(4) service to be effectuated by the U.S. State Department on July 7, 2020 and were informed by the Service Agent that there exists "no means of providing follow up" on the status of the U.S. State Department's service absent entry of an order by this Court directing the U.S. State Department to provide such update. *See* ECF 34-1, ¶ 6. Plaintiffs also inquired

directly to the U.S. State Department but were not provided any additional information. *See id.,* at ¶¶ 7, 8. On October 12, 2020, Plaintiffs ***voluntarily*** filed another Notice on Status of Service to inform the Court that there had been no further information received from the U.S. State Department in regard to Plaintiffs' request for 28 U.S.C. § 1608(a)(4) service. ECF 35.

On January 14, 2021, the Court entered an order dismissing the action for lack of prosecution ("Dismissal Order"). ECF 36. At that time, it is possible service had been effectuated prior to the January 14, 2021 dismissal, but the Court's clerk had not yet been informed by the State Department. It is also possible that service was still in the process of being effectuated. It is well established, and expected, that mandatory service through the FSIA, and especially (a)(4) service by diplomatic channels, "can be time-consuming and fraught with delays."[1]

## ARGUMENT

Plaintiffs bring this motion inviting the Court to reconsider its Dismissal Order and reinstate the case. Plaintiffs' motion is properly brought under Rule 59(e), and the record here does not furnish a proper basis for dismissal for want of prosecution under the governing law established in the Ninth Circuit given the particularities of this case.

---

[1] "The Foreign Sovereign Immunities Act: A Guide for Judges", Federal Judicial Center International Litigation Guide, https://www.fjc.gov/sites/default/files/2014/FSIAGuide2013.pdf. ("In practice, however, effecting (and establishing proof of) service can be time-consuming and fraught with delays.").

## I.   PLAINTIFFS' MOTION IS PROPER UNDER FRCP 59(e).

"[A] postjudgment motion will be considered a Rule 59(e) motion [to alter or amend the judgment] where it involves 'reconsideration of matters properly encompassed in a decision on the merits.'" *United States ex rel. Hoggett v. Univ. of Phoenix,* 863 F.3d 1105, 1108 (9th Cir. 2017), citing *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 174 (1989) (quoting *White v. N.H. Dep't of Emp't Sec.,* 455 U.S. 445, 451 (1982). A motion for reconsideration "is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of entry of judgment." *Circuit City Stores, Inc. v. Mantor,* 417 F.3d 1060, 1064 (9th Cir. 2005), citing *American Ironworks & Erectors, Inc. v. North Am. Const. Corp.,* 248 F.3d 892, 898–99 (9th Cir. 2001).

Under Rule 59(e), a motion for reconsideration may be granted when there is newly discovered evidence or there has been a manifest error of law or fact. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Reconsideration is appropriate if the district court "committed clear error or the initial decision was manifestly unjust". *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Here, Plaintiffs' Rule 59(e) motion requesting reconsideration is brought within 10 days of the Court's Dismissal Order. For the reasons discussed below, which are manifest errors and unjust, Plaintiffs respectfully request that the Court reconsider its Dismissal Order and reinstate the case.

## II.    NINTH CIRCUIT LAW ESTABLISHES THAT DISMISSAL FOR WANT OF PROSECUTION IS NOT PROPER IN THIS CASE.

The Court's dismissal for lack of prosecution is inconsistent with governing Ninth Circuit law, particularly given the specific facts of this case. The service requirements in this matter are strictly delineated in the FSIA, and Plaintiffs have followed these requirements faithfully. The requisite factors to be considered by the Court in determining whether to dismiss an action for want of prosecution militate strongly ***against*** any such dismissal.

### A.    Dismissal for Want of Prosecution Requires Application of Established Ninth Circuit Factors.

The District Court clearly has power to dismiss a case for want of prosecution. *Bautista v. Concentrated Employment Program of Dep't of Labor,* 459 F.2d 1019 (9th Cir. 1972); Fed.R.Civ. P. 41(b); Local Rule 41-1; *see also Link v. Wabash Railroad Co.,* 370 U.S. 626, 629 (1962). However, in determining **whether** dismissal is appropriate, a careful analysis of the ***peculiar*** facts of the matter are crucial. *Ace Novelty Co. v. Gooding Amusement Co.*, 664 F.2d 761, 763 (9th Cir. 1981); *Pearson v. Dennison,* 353 F.2d 24, 28 (9th Cir. 1965). It is not a one-size-fits-all analysis. *Pearson,* 353 F.2d at 28.

There are several factors that the trial court must consider in making its determination on dismissal, including a plaintiff's diligence, the court's need to manage its docket, the public interest in expeditious resolution of litigation, the risk of prejudice to defendants from delay, the policy favoring disposition of cases on their merits, and the availability of less drastic sanctions. *Ace Novelty,* 644 F.2d at 763; *see also States Steamship Co. v. Philippine Air Lines,* 426 F.2d 803, 805 (9th

Cir. 1970) (plaintiff's diligence, plaintiff's right to a hearing on its claim, impairment of appellees' defenses from unreasonable delay, and policy of law in favor of prompt disposition of law suits); *Citizens Utilities Co. v. American Telephone and Telegraph Co.,* 595 F.2d 1171, 1174 (9th Cir.), cert. denied, 444 U.S. 931, 100 (1979) (docket management, public interest in expeditious litigation, risk of prejudice to defendants, policy favoring disposition on the merits); *Anderson v. Air West, Inc.,* 542 F.2d 522, 525 (9th Cir. 1976) (availability of less drastic sanctions). The Ninth Circuit in *Ash v. Cvetkov,* 739 F.2d 493, 496 (9th Cir. 1984), specifically enumerated the factors to be balanced: (1) the court's need to manage its docket, (2) the public interest in expeditious resolution of litigation, and (3) the risk of prejudice to the defendants, *which three should be weighed against both* (4) the policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions.

The Ninth Circuit also holds that "[o]ur cases **require** district courts to warn litigants that dismissal is imminent." *See Oliva v. Sullivan,* 958 F.2d 272, 274 (9th Cir. 1992) (emphasis added); *Johnson v. United States Dept. of Treasury,* 939 F.2d 820, 825 (9th Cir. 1991); *Hamilton v. Neptune Orient Lines, Ltd.,* 811 F.2d 498, 500 (9th Cir. 1987); *Mir v. Fosburg,* 706 F.2d 916, 919 (9th Cir. 1983). Moreover, it has also noted the need for detailed findings of fact. *Ace Novelty Co.,* 664 F.2d at 763.

**B.** **The FSIA Service Provisions Are Mandatory, and Plaintiff Has Strictly Complied.**

The specific facts of this case necessarily turn on the intricacies of service on a foreign sovereign. Service on a foreign state in an action pending in the courts of the United States **must** be made pursuant to the specific provisions of 28 U.S.C. § 1608(a). FRCP 4(j)(1) ("A foreign state . . . must be served in accordance with 28

U.S.C. § 1608"); FRCP 4(m) (the time limit "does not apply to service in a foreign country" under Rule 4(j)); *see also Cavic v. Republic of Serbia*, 2018 WL 6038346, at *2 (C.D. Cal. March 21, 2018) ("Service of foreign states is governed by the Foreign Sovereign Immunities Act[.]"); *Rice Corp. v. Grain Bd. of Iraq*, 582 F.Supp.2d 1309, 1311 (E.D. Cal. September 30, 2008) ("The FSIA prescribes that a political subdivision of a foreign state ***must*** *be* served as prescribed in 28 U.S.C. § 1608(a)") (emphasis added).

The FSIA requires strict compliance for service on a foreign sovereign under the methods delineated in §1608(a), and such service must be attempted in the successive fashion identified therein for service to be properly effectuated. *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1129 (9th Cir. 2010); *see also Doe I v. State of Israel*, 400 F.Supp.2d 86, 101 (D.D.C. 2005) (holding that "[a] plaintiff does not have the privilege to choose from among these four methods. The plain language of § 1608(a) makes clear that the FSIA lists the methods in descending order of preference; a plaintiff may only attempt service through the second method, for example, if service through the first method is unavailable or has proven unsuccessful. The requirements of § 1608(a) are applied strictly."). There is no flexibility or discretion here.

Section 1608(a) provides four methods of service which Plaintiffs must attempt in strict order of priority. 28 U.S.C. § 1608(a). *First,* "[s]ervice in the courts of the United States . . . shall be made upon a foreign state . . . : (1) by delivering a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state[.]" 28 U.S.C. § 1608(a)(1). If no such "special arrangement" exists between plaintiff and the foreign state, the FSIA

requires, *second,* that service be attempted by the procedure provided in Subsection (a)(2). Specifically, § 1608(a)(2) states that "if no special arrangement exists, [service shall be made upon a foreign state] by delivering a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents[.]" 28 U.S.C. § 1608(a)(2). Since no "special arrangement" exists between Plaintiffs and Turkey, Plaintiffs first attempted service under (a)(2). ECF 20 at 5-8. Turkey refused (a)(2) service in a letter from the Turkish Ministry of Justice to the Hague Service Agent informing that Defendant rejected service under the Hague Convention. *See* ECF 21-2 at 2-3; *see also* ECF 22 at 1; ECF 21 at 3.

If "service cannot be made under paragraphs (1) or (2)[,]" a plaintiff must next attempt service under section (a)(3). 28 U.S.C. § 1608(a)(3). Specifically, service under section (a)(3) entails foreign mailing of the summons, complaint and notice of suit "dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." *Id*. Plaintiffs here served Defendant under section (a)(3) on December 5, 2019. ECF 26. The service documents were signed for by the Turkish Ministry of Foreign Affairs. ECF 27 at 4-5. However, this Court held that (a)(3) service was not effective because Turkey had summarily objected to all service by mail in the Hague Convention. ECF 30 at 3.[2]

---

[2] On March 30, 2020 this Court denied Plaintiffs request for the entry of default finding that Defendant had not been served under section 1608(a)(3) even though someone at the Ministry of Foreign Affairs signed for and received the service package. ECF 30. Thereafter, Plaintiffs proceeded to service under 1608(a)(4) because it was more expeditious for the litigation to effectuate (a)(4) service than to submit for an interlocutory appeal. However, Plaintiffs preserve their right to appeal the denial of the entry of default.

Finally, and if service under section (a)(3) service cannot be made, the FSIA provides that service shall be made through "diplomatic channels to the foreign state" by way of the "Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services[.]" 28 U.S.C. § 1608(a)(4). Accordingly, Defendants initiated service under (a)(4). ECF 32 at 3-5. In fact, this Court specifically found that "although Plaintiffs still have not effected service on Turkey, *they have complied with section 1608(a)(4)* thus far." ECF 33 at 2 (emphasis added). Service under the FSIA is very time-consuming and fraught with delays. *Supra,* n.1.[3]

Moreover, the U.S. State Department reports on (a)(4) service directly to the Clerk of the Court, not to Plaintiffs. 28 U.S.C. § 1608(a)(4) ("Once dispatched by the Clerk of the Court, the Secretary of State "shall send *to the clerk of the court* a certified copy of the diplomatic note indicating when the papers were transmitted.") (emphasis added); 22 C.F.R. Part 93.1(e).  Service of those documents through 28 U.S.C. § 1608(a)(4) diplomatic process and procedures is solely within the dominion and control of the U.S. Department of State. Furthermore, and importantly, providing service pursuant to the FSIA is the Department of State's statutory obligation and, provided the hierarchical methods of service set forth in section 1608(a) have been followed, *the State Department has no discretion in complying with the Act*. 28 U.S.C. 1608(a)(4); H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. (1976) reprinted in

---

[3] It is clear that the documents provided by Plaintiffs to the Clerk for sending to the State Department were proper as the record in this case does not indicate that the State Department has "promptly advise[d] the clerk of [any] missing items." 22 C.F.R. Part 93.1(b).

1976 U.S. Code Cong. & Ad. News at 6623 ("There is a hierarchy in the methods of service."); 22 C.F.R. Part 93.1(b).

Importantly, the FSIA does not impose any further requirements on Plaintiffs. *See generally* 28 U.S.C. § 1608(a). Of course, the Court requested that Plaintiffs report on the status of (a)(4) service by April 30, 2020. ECF 30. Plaintiffs provided a service status report on April 29, 2002. ECF 32. The Court requested another such report by July 20, 2020, which Plaintiffs provided on July 17, 2020. ECF 33; ECF 34. Moreover, and without any further order by this Court, Plaintiffs **voluntarily** reported on the status of service to this Court on October 12, 2020. ECF 35. In fact, at the time this Court entered the Dismissal Order, Plaintiffs were preparing another **voluntary** status of service to this Court. Exhibit 1, Declaration of Elizabeth Al-Dajani, ¶ 2.

Plaintiffs have complied completely with the strict service requirements of the FSIA. Plaintiffs have complied completely with the orders of this Court. In fact, Plaintiffs have shown diligence in reporting the status of (a)(4) service **beyond** that which is required by the FSIA and **beyond** that which was required by this Court. Simply put, the length of time it takes for (a)(4) service on a foreign state through diplomatic channels by the U.S. State Department is a time-consuming process which is not under the control of Plaintiffs.

**C.    Application of the Relevant Ninth Circuit Factors to the Record Here Militates Strongly _Against_ Dismissal for Want of Prosecution.**

The Court's reason for dismissal here—that it had "given Plaintiffs nearly six months to serve Defendant and no further progress appears likely to be made"— is not sufficient under the Ninth Circuit's requisite factors for dismissal for lack of prosecution given the particulars of this case. *See* Dismissal Order at 1; *supra* Section

II(A).[4] When considering whether to dismiss a case for lack of prosecution, the district court must weigh the court's need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to the defendants against the policy favoring disposition of cases on their merits, and the availability of less drastic sanctions. *Ace Novelty Co.,* 664 F.2d at 763; *Anderson,* 542 F.2d at 525. These factors weigh overwhelmingly against dismissal for lack of prosecution in this case.

*First,* the Court's need to manage its docket does not substantively weigh in favor of dismissal for want of prosecution here. It is established that FSIA service is time-consuming and fraught with delays, which is something over which Plaintiffs do not have any control. FRCP 4(j)(1) ("A foreign state . . . must be served in accordance with 28 U.S.C. § 1608"); FRCP 4(m) (the time limit "does not apply to service in a foreign country" under Rule 4(j)); ECF 34 at 3 ("there exists 'no means of providing follow up' on the status of the Department of State's service absent entry of an order by this Court directing the Department of State to provide such update."); *see also supra*, n.3. While the time period is long, there is nothing required of the Court while waiting that would materially hamper its docket; the Court and Plaintiffs simply must wait for the U.S. State Department to inform the Clerk as to its service through diplomatic channels. *See* ECF 34; *see* ECF 35; 28 U.S.C. 1608(a)(4). There is little burden on the docket in such circumstances, as the Court does not have to

---

[4] The sixth-month time period alluded by the Court is ***not*** an FSIA requirement or limitation, and service here ***must*** be made pursuant to the specific provisions of 28 U.S.C. § 1608(a). FRCP 4(j)(1) ("A foreign state . . . must be served in accordance with 28 U.S.C. § 1608"); FRCP 4(m) (the time limit "does not apply to service in a foreign country" under Rule 4(j)); *see also Cavic*, 2018 WL 6038346, at *2 (service of foreign states is governed by FSIA).

manage discovery schedules, move pretrial and/or trial dates, or expend judicial resources; it simply has to wait for service to be effectuated in the case by the U.S. State Department. *Cf. Ash*, 739 F.2d 493, 496 (a "pressing caseload" requires the cooperation of litigants in moving forward so that judicial resources are available to others).

In addition, Plaintiffs have already shown diligence *beyond what the Court has required* to routinely update the Court on any changes. Having complied with service under FSIA § 1608(a)(4), no further action or conduct was required of Plaintiffs. Still, Plaintiffs inquired about the status of the (a)(4) service to be effectuated by the U.S. State Department; the Service Agent informed Plaintiffs that there exists "no means of providing follow up" on the status of the U.S. State Department's service absent entry of an order by this Court directing the Department to provide such an update. ECF 34. Plaintiffs also inquired of the U.S. State Department directly, but were not provided any additional information. *Id.* The State Department will inform the Clerk of the Court, not Plaintiffs, of its completion of service through diplomatic channels—a method of service which is painstakingly slow, likely only exacerbated by the change in administration in Washington D.C. 22 C.F.R. Part 93.1(e).

*Second,* the public's interest in expeditious resolution of litigation weighs in favor of reinstatement of the case because dismissal without prejudice would only mean that Plaintiffs would have to refile the complaint and begin FSIA service from the beginning. This would undoubtedly burden the Court and the docket much more than simply waiting for the U.S. State Department to serve through diplomatic channels and return notice of that service to the Clerk. In fact, reinstating the case is **the most expeditious manner** to resolve this litigation, since dismissal will result in

Plaintiffs' refiling and ultimately put the parties back at this same juncture (waiting for service to be effectuated under (a)(4)) after the imposition of additional financial burden on Plaintiffs as well as additional resource expenditures by the district court, all of which is contrary to the public's interest in efficient and expeditious resolution of litigation. Service here had not failed; it was/is simply in process.

*Third,* there is absolutely no risk of prejudice to Defendant in this case. Defendant has not appeared in this litigation and, in fact, has tried to avoid the case.[5] Only "unreasonable" delay will support a dismissal for lack of prosecution and whether *actual* prejudice exists may be an important factor in deciding whether a given delay is "unreasonable." *Ash*, 739 F.2d at 496 (internal citations omitted). Where Defendant itself delayed proceedings by twice objecting to service, the risk of actual prejudice to Defendant from awaiting the State Department to effectuate service is unlikely. Defendant's refusal to accept service under (a)(2) and (a)(3) necessitated that Plaintiffs serve Defendant *via* the Clerk of the Court through (a)(4) service.  There can be no "unreasonable delay" as contemplated by Local Rule 41-1 because, not only were Plaintiffs required to proceed through service initiated by the Clerk and effectuated by the Department of State, Plaintiffs have taken "action" since

_____

[5] Defendant is clearly aware of the case. It twice objected to service of process, first under 28 U.S.C. § 1608(a)(3) and then (a)(4). ECF 21 at 3; ECF 26 (service signed for by someone at the Turkish Ministry); ECF 30 at 3 (this Court stated that the "fact that someone at the Turkish Ministry signed for the FedEx package containing the documents does not override Turkey's objection to service by mail" and noted that Turkey rejects all service channels listed in Article 10 of the Hague Convention). There is nothing stopping Defendant from voluntarily appearing and challenging Plaintiffs' complaint in this case, even on jurisdictional grounds. It has chosen not to do so.

the Clerk issued the request for (a)(4) service upon the Department of State. ECF 34, 35 (status reports); *see* L.R. 41-1.

The aforementioned three factors must be weighed against the public interest favoring disposition of cases on the merits and whether less drastic measures are available. *Ash*, 739 F.2d at 496. And these factors too militate strongly in favor of Plaintiffs and against dismissal of the case. As the Ninth Circuit has clearly held, one of the most crucial factors is a plaintiff's "right to a hearing on its claim[.]" *States Steamship Co.,* 426 F.2d at 805. This is a fundamental notion underpinning the very construction of the federal judicial system which, in this case, provides a very specific and strict mechanism, which Plaintiffs have diligently followed, to bring an action against a foreign state. Having to refile and reinitiate the service process to bring the matter to the stage at which it stood prior to dismissal—waiting for the State Department to serve *via* diplomatic channels—would mean the loss of another year in time and valuable resources. Without disposition of the case on the merits at this time, there is the real possibility of the ultimate prejudice being occasioned upon the 89-year-old Plaintiff Barkev Ghazarian. Plaintiffs are entitled to a hearing on their claims, and they have faithfully adhered to the service requirements established by Congress in seeking such a hearing.

*Finally,* less drastic measures other than dismissal are certainly available, particularly where Plaintiffs have been diligent beyond what the Court and the Federal Rules even require. The Court certainly has other measures at its disposal, including (1) allowing for the (a)(4) service to be effectuated in due course by the Department of State's new administration; (2) ordering the State Department to serve through diplomatic channels by a date certain; or (3) as Plaintiffs have already

identified in prior status reports, requiring the State Department to issue a report on the status of its (a)(4) service. Frankly, there is absolutely nothing that Plaintiffs could have done to be more diligent. *See supra* Section II(B); *see Ace Novelty Co.*, 664 F.2d at 763 ("***nothing in the rules explains what Ace Novelty should have done [differently]***") (emphasis added). Finally, no warning was given prior to the Dismissal Order—especially given the fact that the Court itself found that Plaintiffs had complied with section (a)(4)—even though the Ninth Circuit's district courts are required to warn litigants that dismissal is imminent. *See, e.g., Oliva,* 958 F.2d at 274; *Johnson,* 939 F.2d at 825; *Hamilton, Ltd.,* 811 F.2d at 500; *Mir,* 706 F.2d at 919.[6]

Not only does the weighing of these factors militate in favor of Plaintiffs, this Court did not make any findings of fact as to its consideration of these factors or as to the specific obligation which ***Plaintiffs*** failed to discharge. *See* Dismissal Order; *Ace Novelty,* 644 F.2d at 763 ("We recognize that counsel could have done either act but nothing in the rules explains what Ace Novelty should have done."). The court in *Ace Novelty Co.* remanded the case to the district court to either reinstate the action or enter findings of fact to justify dismissal ***and specify the obligation that plaintiff failed to discharge*** where there was a limited record coupled with an absence of findings of fact that justified dismissal. 664 F.2d at 763. Here, it is unclear what specific obligation this Court believed that Plaintiffs were required to do, but failed to do, after having complied with the FSIA's (a)(4) service requirements. ECF 33 at 2.

---

[6] The Court did not give Plaintiffs notice of the six month window it appears to have been contemplating and, even if it had, there was nothing that Plaintiffs could have done differently after having complied with (a)(4) service other than to wait for the U.S. State Department to serve through diplomatic channels.

Dismissal here was neither expected, nor warranted. Plaintiffs complied with each step of the mandatory FSIA service requirements and notified the Court of the status at each turn that service was—and potentially still is—in process, even when not required by the FSIA or this Court to do so. *See supra* Section II(B). Dismissal in the midst of (a)(4) service would nullify any progress made by the State Department to date in serving through diplomatic channels. It would also send Plaintiffs unnecessarily back to step one and impose on them significant additional financial burdens. Plaintiffs would have to repeat the mandatory succession of service requirements and shoulder, again, all of the ancillary costs associated therewith. In the end, not only Plaintiffs, but also this Court, would find themselves again at this very same juncture, awaiting the State Department to effect service as required under 28 U.S.C. § 1608(a)(4). This is neither reasonable nor expeditious, and it is not warranted under governing Ninth Circuit authority.

## CONCLUSION

Dismissal at this critical stage, where service is in process after Plaintiff faithfully adhered to the required and successive steps to reach service of process through diplomatic means (§ 1608(a)(4)), may negate Plaintiffs' ability to ever have their day in court. Given Plaintiff Barkev Ghazarian's age[7], ultimate prejudice could be levied upon Plaintiffs if this Court does not vacate its Dismissal Order and reinstate the matter *instanter*. A failure to reinstate would only cause the unnecessary squander of effort, resources and time by both Plaintiffs and this Court.

---

[7] Plaintiff Barkev Ghazarian is 89 years of age. Cmplt., ¶ 111.

1    Wherefore, Plaintiffs respectfully request this Court grant this Motion to

2  amend and reconsider the January 14, 2021 Order and reinstate this matter

3  immediately.

4

5

6

7  Dated: January 24, 2021                    Respectfully submitted,

8                                             BARKEV GHAZARIAN and
                                              GARO B. GHAZARIAN
9

10                                            */s/Karnig Kerkonian*

11                                            KARNIG KERKONIAN (pro hac vice)
                                              kkerkonian@kerkoniandajani.com
12                                            ELIZABETH AL-DAJANI (pro hac vice)
                                              ealdajani@kerkoniandajani.com
13
                                              KERKONIAN DAJANI LLP
14                                            1555 Sherman Avenue, Suite 344
                                              Evanston, Illinois 60201
15                                            Telephone: (312) 416-6180
                                              Facsimile: (312) 604-7815
16

17

18                                            GAYANE KHECHOOMIAN
                                              (Bar No. 296673)
19                                            gayane.khechoomian@gmail.com
20                                            201 N. Brand Blvd., Suite 200
                                              Glendale, California 92203-3590
21                                            Telephone: (818) 454-0446

22
                                              *Attorneys for Plaintiffs*
23

24

25

26

27

28

PLAINTIFFS' MOTION TO AMEND AND RECONSIDER THE JANUARY 14, 2021 ORDER